JOSÉ A. ZAMBRANA MALDONADO, demandante y recurrido, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y peticionario.

*Número:* CE-91-314 *Resuelto:* 30 de enero de 1992

*Anabelle Rodríguez, Subprocuradora General,* y *María Adaljisa Dávila, Procuradora General Auxiliar,* abogadas del peticionario; *Héctor L. Moreno Luna,* abogado del recurrido.

La Juez Asociada Señora Naveira de Rodón emitió la opinión del Tribunal.

¿Impide el inciso (f) del Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. sec. 3077a(f), que la notificación al Secretario de Justicia requerida por dicho artículo pueda tener el efecto de interrumpir el término prescriptivo estatuido en el inciso (2) del Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298(2)?

# I

*Los hechos*

El 8 de septiembre de 1988 el Sr. José Antonio Zambrana Maldonado presentó una demanda en la que reclamó cincuenta mil dólares ($50,000) en concepto de daños y perjuicios contra el Estado Libre Asociado. Alegó que el 9 de julio de 1987 se encontraba conduciendo su vehículo

por la carretera Núm. 10 entre el barrio Río Arriba y el pueblo de Utuado, cuando de pronto sintió detonaciones de armas de fuego provenientes de un vehículo que le perseguía. En dicha balacera su vehículo recibió varios impactos, aunque él resultó ileso. El ataque a tiros lo realizaron agentes de custodia de la Administración de Corrección que lo confundieron con un confinado que se había evadido de una institución penal. También alegó que, como consecuencia de este incidente, "estuvo nervioso y desorientado por espacio de varios meses, por lo que no fue hasta el día 2 de diciembre de 1987 que reclamó y notificó al Estado Libre Asociado de Puerto Rico por los daños sufridos".

El 6 de diciembre de 1988 el Estado presentó una moción titulada Moción de Desestimación y/o Sentencia Sumaria, mediante la cual alegó que la acción estaba prescrita a tenor con lo dispuesto en el Art. 1868 del Código Civil, *supra*. Arguyó que la causa de acción surgió el 9 de julio de 1987 y que la demanda se presentó aproximadamente un (1) año y tres (3) meses después, el 8 de septiembre de 1988.

El 4 de enero de 1989 el demandante, señor Zambrana Maldonado, presentó su réplica la cual acompañó con una copia de un Memorando de 2 de diciembre de 1987 —dirigido al Secretario de Justicia— y de los documentos del correo que reflejan que dicho memorando lo envió por correo certificado con acuse de recibo y que éste fue recibido. En dicho memorando el demandante expresó que lo estaba enviando en cumplimiento con el Art. 2A de la Ley Núm. 104, *supra*. Específicamente indicó que le está notificando al Estado "la siguiente reclamación". Luego de esta aseveración, procedió a informar su nombre, dirección, la fecha y el sitio donde ocurrieron los hechos, los daños sufridos, la causa y naturaleza de éstos, y una lista de posibles testigos. También aseveró que la notificación se estaba haciendo en ese momento "ya que el señor Zam-

brana Maldonado se encontraba afectado gravemente de sus nervios, lo que le impidió visitar la oficina de un abogado para iniciar este trámite". En la moción el demandante argumentó que la notificación enviada al Secretario de Justicia evidenció su intención de ejercitar su derecho e hizo saber al Estado que éste era el sujeto pasivo de la obligación. Arguyó, además, que el inciso (f) del Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, *supra*, no puede interpretarse como que excluye la notificación al Secretario de Justicia como mecanismo de interrupción del término prescriptivo. Expresó que "[l]o que verdaderamente quiere decir el inciso (f) ... es que el término para demandar al E.L.A. en daños y perjuicios por culpa o negligencia sigue siendo un año. Que no se ha reducido a noventa (90) días". Continuó argumentando que el Art. 2A, *supra,* no considera el aspecto de la interrupción de los términos prescriptivos y que el requisito de notificación establecido en dicho artículo es enteramente compatible con el Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303.([1])

El 25 de enero de 1989 el Estado presentó oposición a dicha réplica. Argumentó que la notificación al Estado que requiere el Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104, *supra,* 32 L.P.R.A. sec. 3077a, sólo persigue el propósito de dar al primero aviso extrajudicial de la existencia de una posible causa de acción en su contra por daños " 'de modo que pueda activar sus recursos de investigaciones prontamente, antes de que desaparezcan los testigos y las pruebas objetivas en orden a la preparación de una adecuada defensa contra la reclamación o transacción adecuada de la misma, cuando proceda ...' ". *Rivera de Vincenti v. E.L.A.*, 108 D.P.R. 64, 69

---

([1]) El Art. 1873 del Código Civil, 31 L.P.R.A. sec. 5303, dispone:

"La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor."

(1978). Interpretó que "la notificación al Estado no sólo no puede reducir el término de demandar al Estado Libre Asociado de Puerto Rico en daños y perjuicios por culpa o negligencia a noventa días, sino que tampoco puede extenderlo a un año y noventa (90) días y mucho menos interrumpirlo". El 20 de agosto de 1990 el demandante presentó un memorando de derecho con el cual acompañó varios documentos. Entre éstos había una comunicación de 20 de enero de 1988 del Secretario Auxiliar de Litigios dirigida al representante legal del demandante, en la que se solicitaba, a los fines de dar cumplimiento estricto a lo dispuesto en el Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, *supra*, "el nombre y dirección de la facilidad o consultorio médico donde fueron atendidos los reclamantes". También incluyó la contestación a dicha misiva de 11 de febrero de 1988, mediante la cual el demandante envió la información. El 13 de septiembre de 1990 el Estado presentó réplica al memorando de derecho. El 11 de abril de 1991 el foro de instancia declaró sin lugar la solicitud del Estado, resolviendo "que la notificación cursada al señor Secretario de Justicia tuvo el efecto de interrumpir el término prescriptivo". No conforme con esta resolución, el Estado presentó ante nos escrito de *certiorari*.

El 14 de junio de 1991 ordenamos a la parte demandante recurrida mostrar causa por la cual no deberíamos expedir el recurso y revocar la resolución emitida por el Tribunal Superior, Sala de Utuado, el 11 de abril de 1991, mediante la cual éste se negó a desestimar la demanda. El demandante recurrido ha comparecido y, estando en posición de decidir así, procedemos a hacerlo sin ulteriores procedimientos.

## II

*La interpretación de las leyes*

 Al interpretar una ley, nuestra función primordial consiste en lograr que prevalezca su propósito legislativo. *García Pagán v. Shiley Caribbean, Etc.*, 122 D.P.R. 193 (1988); *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985). Es por eso que el análisis de la ley debe hacerse teniendo en mente los fines que ésta persigue y de forma tal que la ley se ajuste a la política pública que la inspira. En el proceso de interpretación no debemos desvincularla del problema cuya solución persigue, pues tenemos "el deber de hacer que el derecho sirva propósitos útiles y evitar una interpretación tan literal que lleve a resultados absurdos". *Pacheco v. Vargas, Alcaide*, 120 D.P.R. 404, 409 (1988). Véanse: *Passalacqua v. Mun. de San Juan*, supra; R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Caps. 36, 39 y 40. "El medio más eficaz y universal para descubrir el verdadero sentido de una ley cuando sus expresiones son dudosas, es considerar la razón y espíritu de ella, o la causa o motivos que indujeron al poder legislativo a dictarla." Art. 19 del Código Civil, 31 L.P.R.A. sec. 19.

 Cabe señalar, además, que la interpretación de una disposición específica de una ley requiere que consideremos el estatuto en su totalidad como "parte de un todo coherente y armónico —el ordenamiento jurídico ...". G. García Valdecasas, *Parte general del Derecho Civil español*, Madrid, Ed. Civitas, 1983, pág. 111. "Esto significa que toda ley debe ser examinada y comparadas sus partes, de suerte que sean hechas consistentes y tengan efecto. Para ello, deben interpretarse las diferentes secciones, las unas en relación con las otras ...." Bernier y Cuevas Segarra, *op. cit.*, Cap. 44, pág. 315. *Pueblo en interés menor L.R.R.*, 125

D.P.R. 78 (1989); *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733 (1989). También hay que tomar en consideración leyes o disposiciones *in pari materia* o complementarias que puedan ayudar a esclarecer cuál ha sido la verdadera intención legislativa. Art. 18 del Código Civil, 31 L.P.R.A. sec. 18; *Aponte v. Srio. de Hacienda, E.L.A.*, 125 D.P.R. 610 (1990); *Riley v. Rodríguez Pacheco*, supra. "Las leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira. No debemos desvincularlas del problema humano cuya solución persiguen." *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 595 (1989); *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759 (1990).

## III

*La prescripción extintiva o liberatoria y su interrupción*

En nuestra jurisdicción civilista, distinta a aquellas donde priva el *(common law)*, "la prescripción no es materia procedimental, es materia sustantiva, objeto de tratamiento específico por nuestro Código Civil, Arts. 1840–1874, 31 L.P.R.A. secs. 5261–5304". *Febo Ortega v. Tribunal Superior*, 102 D.P.R. 405, 407 (1974). Véase, también, Arts. 39–42 y 44–49 del Código de Enjuiciamiento Civil, 32 L.P.R.A. secs. 253–256 y 258–263.

El inciso (2) del Art. 1868 del Código Civil, *supra*, dispone que el plazo prescriptivo de las acciones para exigir responsabilidad por las obligaciones derivadas de la culpa o negligencia, Art. 1802 del Código Civil, *supra*, comienza a contar a partir del momento en que el agraviado tuvo conocimiento del daño. *Rivera Encarnación v. E.L.A.*, 113 D.P.R. 383 (1982). El Art. 1869 del Código Civil, 31 L.P.R.A. sec. 5299, a su vez establece que cuando no exista disposición especial que otra cosa provea, el término prescriptivo para toda clase de acciones se contará desde el día

en que pudieran ejercitarse. Sobre este particular, la norma que rige en el sistema de derecho común es igual.([2])

■ La prescripción extintiva o liberatoria es una institución que "se basa en el imperativo de castigar la inercia en el ejercicio de los derechos y asegurar así el tráfico jurídico, 'el señorío de las cosas', al evitar litigios difíciles de adjudicar por la antigüedad de las reclamaciones".([3]) *De Jesús v. Chardón*, 116 D.P.R. 238, 243 (1985); H.M. Brau del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, Cap. X; M. Albaladejo, *Derecho Civil*, 10ma ed., Barcelona, Librería Bosch, 1989, T. I, Vol. 2, Sec. 107, págs. 493-534. De acuerdo con Díez-Picazo, "la razón última de la prescripción radica en la espera a que razonablemente puede ser sometido el deudor o sujeto pasivo".([4])

■ De otra parte, la interrupción estatuida en el Art. 1873 del Código Civil, *supra*, "es la manifestación inequívoca de quién [sic], amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". *Feliciano v. A.A.A.*, 93 D.P.R. 655, 660 (1966); *De Jesús v. Chardón*, supra, págs. 246–247; *Díaz de Diana v. A.J.A.S. Ins. Co.*, 110 D.P.R. 471, 477 (1980); *Durán Cepeda v. Morales Lebrón*, 112 D.P.R. 623, 625 (1982). Como se podrá observar, la prescripción es un fenómeno basado en la inercia, mientras que la interrupción está fundada en la actividad, la ruptura de esa inercia. De acuerdo a Orozco Pardo, la "interrupción, suspensión y renuncia, son los componentes

---

([2]) "The statute of limitation, where applicable, runs from the time of accrual of the cause of action. A cause of action generally accrues when the complainant is at liberty to sue ...". E. McQuillin, *The Law of Municipal Corporations*, 3ra ed., Illinois, Callaghan and Company, 1982, Vol. 17, Sec. 49.08, pág. 142.

([3]) Para una discusión relacionada con la tesis de que la prescripción extintiva no afecta al derecho sino a la acción de reclamarlo, véase J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1979, T. I, Vol. 1, 2da parte, Cap. XIV, Sec. 3, págs. 847–857.

([4]) L. Díez-Picazo, *La Prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, Cap. IV(2), pág. 40.

que hacen justa y moral a la prescripción". G. Orozco Pardo, *La interrupción de la prescripción extintiva en el derecho civil*, Granada, Universidad de Granada, 1986, Cap. III, pág. 59. Cabe señalar "que la prescripción extintiva está basada en una presunción 'iuris tantum' de abandono, que admite prueba en contra, la existencia de una voluntad manifestada y probada, contraria a la prescripción, destruye aquella presunción, quedando impedida su consumación". Orozco Pardo, *op. cit.*, Cap. V, pág. 193. Véase, también, J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 5ta ed. rev., Madrid, Ed. Reus, 1951, T. XII, pág. 959.

En conformidad con el Art. 1873 del Código Civil, *supra*, para que la interrupción extrajudicial surta efecto, la reclamación o pretensión tiene que ser dirigida al sujeto pasivo del derecho y debe ser recibida por éste. *Díaz de Diana v. A.J.A.S. Ins. Co.*, supra, pág. 476. La reclamación, "aunque por regla general ... corresponde al titular del derecho, el representante voluntario o legal del titular puede formular la reclamación e interrumpir así la prescripción". *Srio. del Trabajo v. F.H. Co., Inc.*, 116 D.P.R. 823, 827 (1986). En cuanto a la forma del acto de la reclamación, Díez-Picazo nos dice:

> La Ley no exige, en este punto, ninguna forma especial y donde la ley no distingue tampoco debemos nosotros distinguir. En cualquier forma que sea hecha la reclamación posee valor interruptivo. ... En todo caso, se podrá plantear un problema de prueba —de la existencia de la reclamación y de su fecha— pero no un problema de forma.(5)

Albaladejo a su vez expresa:

> ... [E]ntre el mero recordatorio de una deuda, sin ninguna dosis de reclamar su pago, y el puro acto de simplemente exigir de forma inexorable éste, hay una serie de posibilidades inter-

---

(5) Díez-Picazo, *op. cit.*, Cap. 11, Sec. 4, pág. 131.

medias, en las que debe entenderse que hay reclamación —y, por tanto, interrupción de la prescripción— siempre que la conciencia social estime que se trata de una conducta en la que, con más o menos suavidad y de forma más o menos tajante o apremiante, se muestre la decisión de obtener el pago.(⁶)

En cuanto al número de veces en que se puede ejercitar el derecho a interrumpir una acción, Díez-Picazo es de la opinión que "nada se opone a que los derechos prescriptibles sean indefinidamente prolongados, sin límite alguno de tiempo, mediante sucesivas reclamaciones del titular o mediante sucesivos reconocimientos del sujeto pasivo o mediante ambas cosas conjuntamente".(⁷)

## IV

*La responsabilidad del Estado por las actuaciones de sus funcionarios, agentes y empleados, y el requisito de la notificación al Estado*

En Puerto Rico, con relación a los daños causados por las actuaciones del Estado a través de sus funcionarios, agentes y empleados, hemos adoptado una fórmula mixta que permite, en forma general pero con ciertas exclusiones específicas, que se demande al Estado.

La ley conocida por la Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104, *supra*, es la que regula las reclamaciones judiciales contra el Estado.(⁸) Esta ley está inspirada en el deseo de que el Estado pueda ser demandado cuando cualquier ciudadano entienda que tiene una buena y justa causa de acción, y que sea el Poder

(⁶) (Énfasis suprimido.) M. Albaladejo, *Comentario al Artículo 1.973 del Código Civil,* 61 Rev. Der. Priv. 987, 989 (1977).

(⁷) (Escolio omitido.) Díez-Picazo, *op. cit.,* pág. 95.

(⁸) Para un recuento histórico sobre el desarrollo de la doctrina de inmunidad soberana y un contraste entre el concepto civilista y el del derecho común, véase la opinión disidente en parte y concurrente en parte del Juez Asociado Señor Rigau en *Galarza Soto v. E.L.A.,* 109 D.P.R. 179 (1979).

Judicial el que determine la validez y las suficiencias de las alegaciones que se formulan contra el Estado.

La Ley Núm. 104, *supra*, enmendó también el Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142, de forma tal que quedara eliminada de éste la distinción que se hacía entre los actos realizados por un agente especial y los realizados por funcionarios, agentes o empleados a quienes propiamente correspondía la gestión practicada. Dispuso que el Estado sería responsable en las mismas circunstancias y condiciones que un ciudadano particular. Antes de la enmienda, el Estado sólo respondía si el daño había sido causado por un agente especial, no cuando había sido causado por el funcionario a quien propiamente correspondía la gestión practicada, en cuyo caso sólo respondía el funcionario en cuestión, según el Art. 1802 del Código Civil, *supra*. En otras palabras, con anterioridad a la Ley Núm. 104, *supra*, el funcionario era el que respondía por los daños que ocasionaba. *Rivera v. Pueblo*, 65 D.P.R. 983 (1946). La Ley Núm. 104, *supra*, vino a beneficiar tanto al ciudadano perjudicado como al funcionario. Su intención es que el Estado responda por los actos y las omisiones de los funcionarios y agentes especiales "en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular",(9) siempre y cuando se cumpla con las condiciones que impone la ley.

Siguiendo una trayectoria de interpretación liberal en relación con la autorización a los ciudadanos para presentar reclamaciones contra el Estado por actuaciones de funcionarios, agentes o empleados, en *Alberio Quiñones v. E.L.A.*, 90 D.P.R. 812, 816 (1964), expresamos que bajo "el estado actual de nuestra Ley y nuestra jurisprudencia [no] se pued[e] hacer una válida distinción entre la responsabilidad de una persona particular y el Estado cuando se trata

---

(9) Art. 1803 del Código Civil, 31 L.P.R.A. sec. 5142.

de un daño causado por negligencia", claro está, dentro de las limitaciones y exclusiones de responsabilidad del Estado establecidas por la Ley Núm. 104, *supra.*

El Art. 2A(c) de la Ley Núm. 104, *supra*, 32 L.P.R.A. sec. 3077a(c), requiere que para que se pueda presentar una reclamación por daños a la persona o a la propiedad contra el Estado, se haga una notificación previa por escrito al Secretario de Justicia "dentro de los noventa (90) días siguientes a la fecha en que el reclamante tuvo conocimiento de los daños que reclama". En dicha notificación hay que hacer constar "la fecha, sitio, causa y naturaleza general del daño sufrido, los nombres y direcciones de sus testigos, y la dirección del reclamante, así como el sitio donde recibió tratamiento médico en primera instancia". Art. 2A(a) de la Ley Núm. 104, *supra*, 32 L.P.R.A. sec. 3077a(a).

Los propósitos del requisito de la notificación previa son:

> ... 1— proporcionar a estos cuerpos políticos la oportunidad de investigar los hechos que dan origen a la reclamación; 2— desalentar las reclamaciones infundadas; 3— propiciar un pronto arreglo de las mismas; 4— permitir la inspección inmediata del lugar del accidente antes de que ocurran cambios; 5— descubrir el nombre de las personas que tienen conocimiento de los hechos y entrevistarlas mientras su recuerdo es más confiable; 6— advertir a las autoridades municipales de la existencia de la reclamación para que se provea la reserva necesaria en el presupuesto anual; y, 7— mitigar el importe de los daños sufridos mediante oportuna intervención ofreciendo tratamiento médico adecuado y proporcionando facilidades para hospitalizar al perjudicado. *Mangual v. Tribunal Superior*, 88 D.P.R. 491, 494 (1963).

Con relación a este requisito de notificación previa al Estado, estatuido en el Art. 2A de la Ley de Reclamaciones y Demandas contra el Estado, *supra*, también hemos seguido la misma trayectoria liberalizadora. Hemos re-

suelto que "si bien es requisito de cumplimiento estricto, no alcanza calidad de condición precedente jurisdiccional", *Loperena Irizarry v. E.L.A.*, 106 D.P.R. 357, 359 (1977); que éste es renunciable; que si existe una aseguradora a quien pueda demandarse directamente no hay que cumplir con éste, *Cortés Román v. E.L.A.*, 106 D.P.R. 504, 516 (1977); que la iniciación de la acción judicial por el municipio o Estado dentro del término establecido por la ley para la notificación, la hace inoperante, *Insurance Co. of P.R. v. Ruiz*, 96 D.P.R. 175, 179 (1968); y que "donde el riesgo de que la prueba objetiva pueda desaparecer es mínimo, donde hay constancia efectiva de la identidad de los testigos y donde el Estado, por tanto, puede fácilmente investigar y corroborar los hechos alegados en la demanda que se radique —no es de aplicación inexorable" el requisito de notificación previa. *Meléndez Gutiérrez v. E.L.A.*, 113 D.P.R. 811, 815 (1983).

Finalmente, en *Passalacqua v. Mun. de San Juan*, supra, pág. 629, "enfatizamos que no extenderíamos sin sentido crítico el requisito de la notificación; que '[e]stas condiciones limitativas del derecho de las personas a solicitar reparación deben interpretarse restrictivamente', y que '[n]o hay razón alguna para distinguir en el caso de los cuerpos políticos, pues conocida es la tendencia prevaleciente a exigirles responsabilidad en la misma forma y extensión que a las personas naturales' ". (Énfasis suplido y escolio omitido.) Véase *Insurance Co. of P.R. v. Ruiz*, supra, a la págs. 178, 179.

Todo esto requiere, en correcta hermenéutica jurídica, que una disposición estatutaria que de alguna forma limite el derecho de los perjudicados a solicitar indemnización, debe examinarse restrictivamente. *Flores Román v. Ramos González*, 127 D.P.R. 601 (1990); *Vázquez Negrón v. E.L.A.*, 109 D.P.R. 19 (1979); *Insurance Co. of P.R. v. Ruiz*, supra.

Con todos estos principios legales en mente, pasemos

ahora analizar e interpretar el inciso (f) del Art. 2A de la
Ley Núm. 104, *supra*.

## V

*Interpretación del inciso (f) del Art. 2A de la Ley de recla-
maciones y Demandas contra el Estado*

El inciso (f) del Art. 2A de la Ley de Reclamaciones
y Demandas contra el Estado, Ley Núm. 104, *supra*, dis-
pone:

> Esta sección no modificará en forma alguna, para aquellos
> reclamantes que cumplan con sus disposiciones, el término
> prescriptivo fijado por el inciso (2) de la sec. 5298 del Título 31.

El inciso (2) del Art. 1868 del Código Civil, *supra*,
dispone:

> Prescriben por el transcurso de un (1) año:
>
> . . . . . . . .
>
> (2) La acción para exigir la responsabilidad civil por injuria o
> calumnia, y por las obligaciones derivadas de la culpa o negli-
> gencia de que se trata en la sec. 5141 de este título desde que lo
> supo el agraviado.

A pesar de que la Ley de Reclamaciones y Demandas
Contra el Estado se aprobó en 1955, no fue hasta el 1961
que mediante la Ley Núm. 121 de 24 de junio se enmendó
ésta para añadir el requisito de notificación previa al Art.
2A, *supra*. Este artículo proviene del Art. 96 de la Ley Mu-
nicipal del 1960, Ley Núm. 142 de 21 de julio de 1960, 21
L.P.R.A. ant. sec. 1603, que aparentemente fue tomado en
gran parte de las Secs. 50-e y 50-i de la Ley Municipal de
Nueva York. 23 *McKinney's General Municipal Law* Secs.
50-e y 50-i (1986); Informe de la Comisión de lo Judicial de
la Cámara de Representantes sobre el P. de la C. 492 de 12
de abril de 1966; *Passalacqua v. Mun. de San Juan*, supra,
pág. 629.

█ Del Informe, *supra*, se desprende que el propósito que animó la aprobación del Art. 2A para la Ley Núm. 104, *supra*, fue el siguiente:

El propósito de la medida es el de fijar un término durante el cual deberán notificarse las reclamaciones de cualquier clase contra el Estado Libre Asociado de Puerto Rico por daños a la persona o la propiedad causados por culpa o negligencia del Estado, siguiendo el principio de la previa notificación ya establecido en cuan[t]o a acciones de igual naturaleza contra los municipios en virtud del Artículo 96 de la Ley Núm. 142 de 21 de julio de 1960, que establece un Sistema de Gobierno Local para los Municipios de Puerto Rico.

*El término para radicar acciones de este tipo es de un año a partir de la fecha en que ha ocurrido el alegado daño.* En muchos casos y por diversas razones, las acciones se radican cuando ya está para finalizar el término y ocurre que el Estado, por el tiempo transcurrido desde que ocurrieron los alegados daños, se encuentra con problemas de falta de información o información deficiente en cuanto a los hechos y aún con la circunstancia de la reorganización de una agencia o dependencia como resultado de lo cual se han extraviado los récords que hacen referencia al accidente u origen de los daños, así como con el movimiento de testigos presenciales, cuyo paradero se ignora al momento en que se notifica de la acción, todo ello en perjuicio de la oportunidad amplia que debe tener el Estado para hacer las alegaciones correspondientes y establecer las defensas en estos casos.

Se fija un término de 90 días a partir del momento en que se tenga conocimiento de los daños que se reclaman para que la parte interesada notifique por escrito al Secretario de Justicia, por correo certificado o por diligenciamiento personal o en cualquier otra forma fehaciente, especificando fecha, sitio, causa y naturaleza general del daño sufrido, nombres y direcciones de testigos así como la dirección del reclamante y sitio donde recibió tratamiento médico en primera instancia. En el caso de menores de edad o de personas sujetas a tutela, el representante legal vendrá obligado a cumplir con el requisito de notificación dentro de los 90 días, pero se dispone que si dicho representante legal no cumpliere con el requisito, podrá hacerlo el menor o la persona sujeta a tutela. Se dispone que no se podrá iniciar acción judicial alguna contra el Estado por daños causados por su culpa o negligencia si no se ha cumplido antes con el requisito de notificación e *igualmente se establece que cuando se cumpla con el requisito de notificación el término para iniciar la*

*acción es el que dispone la ley como se ha expresado
anteriormente.* (Énfasis suplido.) Informe, *supra*, págs. 1–2.

Al aprobarse la Ley Núm. 104, *supra*, originalmente, se estableció específicamente que para las acciones allí autorizadas regirían los términos fijados en las leyes aplicables. Art. 8 (32 L.P.R.A. sec. 3083). Ahora bien, al añadirse el Art. 2A, *supra*, se dispuso, en el inciso (e), que no se podría iniciar una acción contra el Estado si antes no se cumplía con el requisito de la notificación previa. Se creó, pues, un aparente conflicto entre el inciso (e) y los Arts. 1868 y 1869 del Código Civil, *supra*. El inciso (e) creó la incertidumbre de si el término prescriptivo comenzaba a transcurrir desde que el agraviado tuvo conocimiento de los daños (Art. 1868) o desde que se podía ejercitar la acción (Art. 1869), o sea, desde que se hacía la notificación, ya que la notificación es un requisito para poder iniciar la acción. El inciso (f) aclaró la situación al establecer que el cumplimiento con los requisitos establecidos por este artículo, "no modificará, en forma alguna", el término prescriptivo de un (1) año fijado por el Art. 1868 del Código Civil, *supra*. El término prescriptivo comienza a transcurrir desde que el agraviado tuvo conocimiento de los daños, independientemente de que no se pueda iniciar la acción hasta que se haga la notificación.

También cabe señalar que el Art. 2A, *supra*, no hace mención del efecto que tendrá el cumplimiento con el requisito de notificación previa sobre el Art. 1873 del Código Civil, *supra*, que regula la interrupción del término prescriptivo de las acciones. La Ley Núm. 104, *supra*, no limita el derecho de un perjudicado a interrumpir el término prescriptivo de una acción contra el Estado en daños . El inciso (f) del Art. 2A, *supra*, no tiene ni puede tener este efecto. El Art. 2A, *supra*, es una limitación al derecho de los perjudicados a solicitar indemnización de parte del Estado, y como tal, debe ser interpretado restrictivamente.

Por lo tanto, nada impide que junto con la notificación previa al Secretario de Justicia que exige el Art. 2A, *supra,* se incluya la reclamación interruptora del Art. 1873 del Código Civil, *supra.* Esta interpretación no sólo es cónsona con el propósito de la Ley Núm. 104, *supra,* de que el Estado responda bajo las mismas circunstancias, forma y extensión que a las personas naturales, sino que también armoniza con las figuras jurídicas de la prescripción e interrupción.

## VI

*Aplicación del Derecho a los hechos del caso*

Pasemos ahora a examinar la notificación que el demandante Zambrana Maldonado cursó al Secretario de Justicia. Si en la notificación Zambrana Maldonado se limitó a informar, entonces el término prescriptivo no quedó interrumpido, pues esto constituiría mera información, no "la manifestación inequívoca de quién, amenazado con la pérdida de su derecho, expresa su voluntad de no perderlo". *Feliciano v. A.A.A.,* supra. Al analizar la comunicación enviada al Secretario de Justicia, debemos tener presente que la norma con respecto a la interrupción es que "[e]n cualquier forma que sea hecha la reclamación posee valor interruptivo"[10] y que "nada se opone a que los derechos prescriptibles sean indefinidamente prolongados mediante interrupciones extrajudiciales sucesivas".[11]

La notificación previa al Secretario de Justicia fue hecha por el "abogado de la parte reclamante", y en ella el señor Zambrana Maldonado expresó que estaba notificando "la siguiente reclamación". Luego procedió a indicar, entre otras cosas, la fecha y el sitio donde ocurrieron los

---

[10] Díez-Picazo, *op. cit.,* pág. 131.

[11] Albaladejo, *supra.*

hechos, los daños sufridos y la causa y naturaleza de éstos. Aunque esto dista mucho de ser un modelo de reclamación interruptiva, analizada en su totalidad y de forma liberal, esta comunicación expresa la voluntad inequívoca del señor Zambrana Maldonado de ejercer su derecho a que el Estado le resarza por los daños sufridos.

Habiéndose interrumpido el término prescriptivo mediante reclamación extrajudicial, la acción del demandante Zambrana Maldonado contra el Estado no estaba prescrita.

Por todo lo antes expuesto, *se expide el auto solicitado y se dictará sentencia confirmando la resolución emitida por el Tribunal Superior, Sala de Utuado, el 11 de abril de 1991 y devolviendo el caso al foro de instancia para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Negrón García disiente con opinión escrita. El Juez Asociado Señor Rebollo concurre con el resultado sin opinión escrita.

— O —

Opinión disidente del Juez Asociado Señor Negrón García.

*El derecho no opera en el vacío.* No podemos suscribir la opinión que resuelve que la notificación al Secretario de Justicia exigida por la *Ley de Reclamaciones y Demandas contra el Estado* interrumpe el tiempo prescriptivo de un (1) año.

Según expusiéramos en *Mangual v. Tribunal Superior*, 88 D.P.R. 491, 494 (1963), los propósitos de la notificación son: (1) dar al Estado la oportunidad de investigar los hechos que originan las reclamaciones; (2) desalentarlas; (3) estimular su pronto arreglo; (4) hacer viable inmediatamente la inspección del lugar del accidente antes de que

ocurran cambios; (5) descubrir y entrevistar el nombre de las personas con conocimiento mientras su recuerdo es más confiable; (6) advertir a las autoridades "de la *existencia de la reclamación* para que se provea la reserva necesaria en el presupuesto anual" —(énfasis suplido) íd.— y (7) minimizar los daños mediante la oportuna intervención ofreciendo tratamiento médico adecuado y proporcionando facilidades para hospitalizar al perjudicado.

## II

El Art. 2A(f) de la Ley de Reclamaciones y Demandas contra el Estado regula expresamente la cuestión. Dispone:

> Este artículo no modificará, en forma alguna, para aquellos reclamantes que cumplan con sus disposiciones, el término prescriptivo fijado por el inciso 2 del artículo 1868 del Código Civil de Puerto Rico. 1966 Leyes de Puerto Rico 397.

Notamos que los factores claves son "no modificación en forma alguna", esto es, que la ley no cambia de ningún modo el término de un (1) año; ni reduce *ni amplía.*

Este lenguaje, en el espíritu del estatuto, no tiene otro significado que aclarar y estipular que la notificación no afectaría ni alteraría que discurra el término del año. A fin de cuentas, se notifica al Secretario de Justicia una reclamación, no una tarjeta de felicitación.

Si el propósito manifiesto de toda notificación previa bajo el Art. 2A, 32 L.P.R.A. sec. 3077(a), es precisamente avisar al Estado de una "reclamación" por daños, a base de la información mínima que es menester consignar, en sana lógica, bajo el razonamiento mayoritario, es evidente que *siempre* la susodicha información constituirá automáticamente una reclamación *interruptora;* esto es, manifestará la voluntad inequívoca del remitente de "reclamar". Si no es así, ¿para qué se hace? El mejor ejemplo constituye la

notificación cursada en el caso de autos que, al decir mayoritario, "dista mucho de ser un modelo de reclamación interruptiva ...". Opinión mayoritaria, pág. 761.

La interpretación mayoritaria tiene el efecto de ampliar mecánicamente el término de un (1) año. Es contraria al espíritu del estatuto y pone en desventaja al Estado.

Disentimos.