# 99 DTA 155

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL III - ARECIBO Y UTUADO**

CHARLIE CAR RENTAL, INC.
Demandante-Apelante

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandado-Apelado

Núm. KLAN-99-00010

San Juan, Puerto Rico, a 11 de mayo de 1999

Panel integrado por su Presidenta, Juez Pesante Martínez
y los Jueces Martínez Torres y Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Acude ante este Foro Charlie Car Rental, Inc., mediante esta apelación, en la que solicita que se revoque la sentencia dictada por el Honorable Elmer L. Cuerda Acevedo, Juez del Tribunal de Primera Instancia, Sala Superior de Utuado. Mediante ésta, se determinó que Charlie Car Rental, Inc., no era un tercero inocente, por lo que se declaró sin lugar la demanda sobre impugnación de confiscación radicada por éste. Luego de considerar detenida y cuidadosamente la comparecencia de las partes, así como el derecho aplicable, resolvemos que procede revocar la sentencia recurrida.

### I

El día 3 de abril de 1996, María García Bachiller (en adelante la señora García) y Miguel García, arrendaron un vehículo de motor a Charlie Car Rental, Inc., (en adelante Charlie). El señor Miguel García prestó su firma para el arrendamiento del vehículo, como favor a la señora García, a quien conoció por un amigo mutuo, ya que ésta no tenía tarjeta de crédito para hacerlo por sí misma.

El señor Josué Salyer González, empleado de Charlie y quien arrendó el vehículo objeto de este litigio, orientó a las partes sobre la necesidad de poseer licencia de conducir, sobre la necesidad de que el arrendatario fuere mayor de 25 años, y sobre la deseabilidad del tipo de vehículo. También les orientó sobre el hecho de que ninguna persona que no estuviere en el contrato podía conducir el vehículo.

El 5 de abril la Señora García se dirigió a Jayuya en el vehículo arrendado en compañía de su marido el señor Luis A. Alvarado Garrastegui (en adelante señor Alvarado). Estando en Jayuya, el señor Alvarado, a través de la fuerza le arrebató las llaves del vehículo a la señora García, y utilizando el mismo en compañía del señor Jorge Hernández Rivera fue intervenido por la policía. En dicha intervención la policía les incautó armas de fuego y sustancias controladas. Por ello, el vehículo fue confiscado.

El 31 de abril de 1996, Charlie presentó demanda de impugnación de confiscación alegando, en síntesis, que el era un tercero inocente por lo que no procedía la confiscación. El 18 de abril de 1997, el Tribunal de Primera Instancia declaró sumariamente con lugar la demanda sobre impugnación de confiscación, siendo esta decisión apelada por el Estado ante este Tribunal. El Tribunal de Circuito de Apelaciones revocó la sentencia y ordenó a que se continuara con los procedimientos en el Tribunal de Primera instancia.

El 17 de septiembre de 1998 fue celebrada la vista evidenciaria en el Tribunal de Primera Instancia. El 17 de noviembre del mismo año el Tribunal dictó la sentencia en la que determinó que Charlie no era un tercero inocente. Inconforme con tal decisión Charlie acude ante nos alegando que el Tribunal de Primera Instancia erró al determinar que él no era un tercero inocente protegido contra la confiscación de su vehículo de motor.

Luego de examinar detenida y cuidadosamente el recurso instado, la exposición narrativa de la prueba estipulada, así como el derecho aplicable hemos decidido revocar la sentencia apelada.

## II

La confiscación es el acto de ocupación que lleva a cabo el Ejecutivo de todo derecho de propiedad sobre cualesquiera bienes, derechos, privilegios, intereses, reclamaciones, valores, dinero en efectivo, vehículos y cualquier otro objeto análogo que haya sido utilizado en relación a la comisión de delitos graves, y menos graves que estén tipificados en las secs. 3001 *et seq.* del Título 33; en las leyes de sustancias controladas; de armas y explosivos; en las leyes contra el crimen organizado; en las leyes contra la apropiación ilegal de vehículos; leyes de vehículos y tránsito, y de embarcaciones, entre otras. Ley Uniforme de Confiscaciones, Ley Núm. 93 de 13 de julio de 1988, 34 L.P.R.A. sec. 1723; *Del Toro Lugo v. E.L.A.,* Opinión del 12 de septiembre de 1994, **94 J.T.S. 119.**

De otra parte, es menester indicar que los hechos ocurrieron el 3 de abril de 1996, y no le es de aplicación la enmienda efectuada a la Ley Uniforme de Confiscaciones por virtud de la Ley Núm. 176 de 28 de agosto de 1996 mediante la cual se establece una presunción de que no existe vínculo alguno entre la empresa dueña del vehículo arrendado, el cual es usado en la comisión de un delito y el usuario u operador del vehículo evitando así la confiscación del mismo. Bajo el nuevo estado de derecho le corresponde al Estado controvertir la presunción para establecer la existencia del vínculo entre la empresa y los violadores de la ley que utilizan el vehículo alquilado. Sin embargo, la enmienda aludida no es aplicable al caso de autos pues se estaría violando el principio constitucional que prohíbe la aplicación retroactiva de las leyes.

La confiscación es un procedimiento de carácter *in rem*; que no es otra cosa que decir que el mismo va contra la cosa y no contra el dueño de la propiedad, su poseedor, encargado o cualquier otra persona con algún interés legal sobre la misma. *"Por ello, si el dueño, poseedor o encargado del vehículo, o la persona con interés legal sobre el mismo voluntariamente ha puesto dicho vehículo en posesión del infractor o de la persona bajo la cual éste actúa, los derechos de aquéllos corren la suerte del uso a que el infractor pueda someter el vehículo. (Citas omitidas)"* General Accident Insurance Co. v. E.L.A., Opinión del 22 de noviembre de 1994, **94 J.T.S. 140,** a la pág. 410.

Históricamente se ha visto la confiscación de artículos que han sido utilizados para cometer actos ilícitos, como parte del mecanismo que poseen las autoridades gubernamentales en la lucha contra el crimen. Ello, porque evita que el instrumento confiscado vuelva a ser utilizado para futuros actos ilegales, y porque al ser un castigo adicional al que puede enfrentarse el autor del delito, sirve como agente disuasivo. *Id.*

No empece a ello, la norma general tiene su excepción en los casos en que el propietario no ha puesto el vehículo en posesión del infractor de manera voluntaria, *E.L.A. v. Tribunal,* 94 D.P.R. 717 (1967), o cuando se han tomado mediadas cautelares expresas para precaver el uso ilegal de la propiedad en la comisión de un delito. *Ochoteco v. Tribunal Superior,* 88 D.P.R. 517 (1963). Por lo que el Tribunal Supremo esbozó la doctrina de tercero inocente, la que establece que cuando los dueños de automóviles no han autorizado el uso de los mismos y, sin su anuencia o conocimiento, los vehículos han sido utilizados para la comisión de delitos, sus dueños quedan protegidos de la confiscación. *General Accident Insurance Co. v. E.L.A., supra.*

Además, el Tribunal Supremo ha establecido que cada caso debe verse y pesarse a la luz de sus hechos. *"No toda entrega de la posesión de un vehículo tiene iguales motivaciones ni idéntica justificación, ni la misma necesidad ni similares propósitos".* Carlo v. Secretario de Justicia, 107 D.P.R. 356 ( 1978). Al no ser favorecidas por las cortes las confiscaciones y al interpretarse restrictivamente los estatutos que las autorizan, se ha sostenido que tal interpretación debe resultar consistente con la justicia y los dictados de la razón natural. *Pueblo v. González Cortés,* 95 D.P.R. 164 (1967); *Del Toro Lugo v. E.L.A., supra,* a la pág. 160.

En síntesis, al evaluar la defensa del tercero inocente se considerarán los siguientes criterios: a) validez del propósito que persigue la confiscación; b) la razón natural; y c) nuestro sentido de justicia.

En el caso de autos el hermano foro de Instancia erró al concluir que Charlie no era un tercero inocente. Explicamos.

## III

De la prueba vertida en el caso surge claramente que la intervención del señor Miguel García fue tan sólo a los efectos de hacer posible que la señora García arrendara el vehículo en cuestión facilitándole su firma y tarjeta de crédito. Tanto Miguel García como Charlie conocían el hecho de que la señora García iba a utilizar el vehículo. Por lo que, al igual que Instancia, tenemos que concluir que la posesión del vehículo por parte de la señora García era una consentida por parte de Charlie y que, como tal, los derechos de éste corrían la misma suerte por el uso que aquélla le diera al vehículo. Ahora bien, este hecho de por sí no hace inaplicable la figura del tercero inocente, ya que como veremos la posesión posterior por el señor Alvarado del vehículo no era una consentida y Charlie tomó las medidas cautelares para evitar el uso ilegal del vehículo arrendado.

De los hechos del caso surge que al momento en que la policía interviene con el señor Alvarado, era éste quien conducía el vehículo y no la señora García, quien era la persona autorizada para ello. La señora García testificó que ella no había consentido a que su marido, el señor Alvarado, utilizara el vehículo, sino que, por el contrario, fue el señor Alvarado quien tomó posesión del referido automóvil a través de la intimidación y fuerza. El sólo hecho de que la señora García no haya reportado a la policía la agresión del cual fue objeto por parte de su esposo, no hace su versión una inverosímil. El llegar a esta conclusión, se estaría elevando a rango probatorio el que toda mujer que alegue que su cónyuge la agredió tenga que como requisito para que su testimonio sea creído, radicar antes una querella ante la policía.

Aunque aceptáramos que la posesión del señor Alvarado fue una consentida por la señora García, tendríamos que de igual forma concluir que dicho consentimiento no podía atribuírsele a Charlie, ya que según la prueba vertida en el caso éste tomó todas las medidas cautelares expresas para precaver el uso ilegal de la propiedad. *Ochoteco v. Tribunal Superior, supra.*

Según se desprende de la determinación de hechos que hiciera el propio Tribunal apelado el señor Salyer González empleado de Charlie, quien arrendó el vehículo objeto de este pleito, orientó tanto a Miguel García como a la señora García sobre los pasos requeridos sobre la licencia de conducir, la necesidad de que fueran mayores de edad y más o menos, la necesidad para el tipo de vehículo. Además, el Tribunal en sus determinaciones de hechos señaló que el señor Salyer González también les advirtió sobre el hecho de que ninguna persona que no estuviere en el contrato podía conducir la unidad arrendada.

La lectura de estas determinaciones son suficientes para establecer que Charlie tomó las medidas cuatelares requeridas para evitar el uso ilegal del vehículo en cuestión. Exigir otras medidas es una determinación peligrosa a los efectos de que estaríamos imponiendo una carga muy onerosa en los hombros de los arrendadores de autos, toda vez que prácticamente le estaríamos exigiendo a éstos que para cada arrendamiento, orienten a los arrendatarios sobre todas las posibles consecuencias legales a que podrían enfrentarse al utilizar sus vehículos para evitar así, ser encontrados incursos en responsabilidad.

Los arrendadores de autos sólo pueden tomar las medidas cautelares que a su haber poseen. No se puede pretender el que éstos a través de las advertencias que hacen a los arrendatarios, eviten cualquier uso ilegal posible del que pueden ser objetos las unidades arrendadas. Tampoco dichas advertencias evitan el que terceros sin autorización intervengan con el uso de los vehículos arrendados.

Además, otro aspecto y no por tratarse último significa que es menos importante, es lo que estaba pautado en el contrato. El contrato en cuestión es evidentemente uno de adhesión, en el que Charlie dictó las condiciones que fueron aceptadas por la señora García y el señor Miguel García. En este tipo de contrato hemos observado

que de ordinario el arrendatario tiene que aceptar lo que propone el arrendador porque dicho arrendatario no está en posición de exigir mejores términos. Por ello, es que se ha reconocido que en dichos contratos es donde se reduce al mínimo la bilateralidad contractual. *Zequeira v. CRUV,* 83 D.P.R. 878 (1961). Esto provoca que las cláusulas oscuras de estos contratos deban interpretarse liberalmente a favor de la parte contratante económicamente más débil, que en este caso es el arrendatario. *Santiago v. Kodak Caribbean Ltd.,* 129 D.P.R. 740 (1992). Aunque se ha reconocido que no empece a la norma general, ésta no tiene el efecto de obligar a que se interprete a favor del arrendatario unas cláusulas que claramente y sin ambigüedad le dan la razón al arrendador.

En el caso de autos aunque está claro que el contrato en cuestión es uno de adhesión, el mismo es uno en donde sus cláusulas son claras y no dan margen a la ambigüedad, por lo que es nuestro parecer que se deben de aceptar como correctas. Toda vez que el contrato de autos es uno válido y que las partes consintieron al mismo, concluimos que las cláusulas incorporadas en él son ley entre las partes y que las mismas contribuyeron en la complementación de las medidas cautelares a que Charlie venía obligado a cumplir. En dicho contrato se especifica el hecho de que solamente los comparecientes al mismo serán los autorizados a conducir el vehículo alquilado. Por lo que, y en virtud de que en el contrato se advertía quiénes eran las personas autorizadas a utilizar el vehículo, y otras consideraciones, nos es imposible el que hoy lleguemos a otra conclusión que no sea la de determinar que Charlie tomó todas las medidas cautelares posibles y razonables para evitar el uso ilegal del vehículo.

En síntesis, en este caso no se cumple con el propósito que persigue la confiscación, ya que el verdadero dueño del vehículo es un tercero inocente que nada tuvo que ver con el acto ilegal, por lo que el efecto de disuadir al criminal no está presente, y el temor de que el vehículo vuelva a ser utilizado en un acto criminal tampoco existe, ya que el agente criminal que dio paso a la controversia de autos no es el dueño del automóvil. No hay razón aparente en nuestro amplio sentido de justicia que nos mueva a pensar que la confiscación del vehículo en el caso de autos deba prevalecer. En una causa de apretado pentagrama sobre los hechos como el que nos ocupa, optamos por resolver de acuerdo a la vertiente que nos ofrece mayor tranquilidad de conciencia.

## IV

Por los fundamentos antes expuestos, revocamos la sentencia dictada por el Tribunal de Primera Instancia y declaramos a Charlie Car Rental, Inc. como un tercero inocente declarándose con lugar la demanda de impugnación que éste radicara.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General